IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No 20-cv-01808-NRN

JEDIDIAH PEARSON,

Plaintiff,

v.

ANDREW SAUL, Commissioner of Social Security,

Defendant.

## OPINION AND ORDER

**N. Reid Neureiter**
**United States Magistrate Judge**

The government determined that Plaintiff Jedidiah Pearson was not disabled for purposes of the Social Security Act. (AR 46.)[1] Mr. Pearson has asked this Court to review that decision. The Court has jurisdiction under 42 U.S.C. § 405(g), and both parties have agreed to have this case decided by a United States Magistrate Judge under 28 U.S.C. § 636(c). (Dkt. #13.)

## Standard of Review

In Social Security appeals, the Court reviews the decision of the administrative law judge (ALJ) to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied. *See Vallejo v. Berryhill,* 849 F.3d 951, 954 (10th Cir. 2017). "Substantial

---

[1] All references to "AR" refer to the sequentially numbered Administrative Record filed in this case. Dkt. #12, #12-1 through #12-40.

evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Noreja v. Comm'r, SSA*, 952 F.3d 1172, 1178 (10th Cir. 2020) (internal quotation marks omitted); *see also Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) ("Evidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."). The Court "should, indeed must, exercise common sense" and "cannot insist on technical perfection." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). "But in making this determination, [the court] cannot reweigh the evidence or substitute [its] judgment for the administrative law judge's." *Smith v. Colvin*, 821 F.3d 1264, 1266 (10th Cir. 2016).

A person is disabled within the meaning of the Social Security Act only if her physical and/or mental impairments preclude her from performing both her previous work and any other "substantial gainful work which exists in the national economy." 42 U.S.C. § 423(d)(2). However, the mere existence of a severe impairment or combination of impairments does not require a finding that an individual is disabled within the meaning of the Social Security Act. To be disabling, the claimant's condition must be so functionally limiting as to preclude any substantial gainful activity for at least twelve consecutive months. *See Kelley v. Chater*, 62 F.3d 335, 338 (10th Cir.1995) (citing 42 U.S.C. §423(d)(1)(A)). Further, as set forth in 42 U.S.C. § 423(d)(2)(A), an individual is considered disabled only where his physical and mental impairments are so severe that he is "unable to do his previous work" and "cannot, considering his age, education,

and work experience, engage in any other kind of substantial gainful work which exists in the national economy. . . ."

The Social Security Administration uses a five-step sequential process for determining whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step process requires the ALJ to consider whether a claimant: (1) engaged in substantial gainful activity during the alleged period of disability; (2) had a severe impairment; (3) had a condition which met or equaled the severity of a listed impairment; (4) could return to his past relevant work; and, if not, (5) could perform other work in the national economy. *See* 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4); *Williams v. Bowen*, 844 F.2d 748, 750–51 (10th Cir. 1988). The claimant has the burden of proof through step four; the Social Security Administration has the burden of proof at step five. *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007).

## **Factual and Procedural Background**

After his application for disability insurance benefits and supplemental security income were initially denied, Mr. Pearson requested a hearing before an ALJ. The hearing was held on January 27, 2020.

The ALJ found that Mr. Pearson was 38 years old on July 20, 2016, the alleged disability onset date. (AR 45.) He has a high school education and past relevant work experience as a bartender and joint terminal air controller. (AR 44–45.) Though Mr. Pearson was briefly employed by Best Buy, the ALJ found that this was an unsuccessful work attempt. (AR 36.) Therefore, Mr. Pearson has not engaged in substantial gainful activity since the alleged disability onset date.

The ALJ found that Mr. Pearson was not disabled and therefore not entitled to disability insurance benefits or supplemental security income benefits. Though the medical evidence established that Mr. Pearson suffers from severe impairments—including degenerative disk disease of the cervical and lumbar spine, degenerative joint disease in the left shoulder, post-traumatic arthritis, and obesity—the ALJ found that the severity of Mr. Pearson's impairments does meet or medically equal the severity of the impairments set forth in 20 C.F.R. §§ 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926.[2] (AR. 36–38.)

The ALJ further found that Mr. Pearson has the residual functional capacity ("RFC") to perform a reduced range of "light work," as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b). Specifically, the ALJ found:

> [t]he claimant can perform a range of light work, meaning the claimant can lift and/or carry twenty pounds occasionally and ten pounds frequently. The claimant can frequently but not constantly bend, squat, and kneel. He can perform occasional overhead work. He can have no moving machinery or unprotected heights. He can frequently but not constantly handle and finger. He can occasionally climb ladders and scaffolds. He can have occasional foot and leg controls. He can have no temperature extremes.

(AR 39.) Based on his RFC findings, the ALJ concluded that Mr. Pearson was unable to perform his past relevant work as a joint terminal air controller and bartender. (AR 44.) However, the ALJ determined that there were jobs existing in

---

[2] Mr. Pearson alleged several other physical impairments as well as mental impairments, which the ALJ found to be non-severe. Mr. Pearson does not challenge these findings on appeal.

4

significant numbers in the national and local economies that he could perform. (AR 45–46.) Therefore, at step five, the ALJ found Mr. Pearson not disabled.

On appeal, Mr. Pearson argues that the ALJ's findings concerning Dr. Nazli McDonnell, M.D.'s medical opinion and Mr. Pearson's RFC are not supported by substantial evidence. Mr. Pearson asks that the matter be remanded. For the reasons set forth below, the Court disagrees and will affirm the decision of the ALJ.

## Analysis

**I.      The ALJ's finding concerning Dr. McDonell's medical opinion is supported by substantial evidence.**

Mr. Pearson first argues that the ALJ erred in finding that the medical opinion of Dr. McDonnell was not persuasive. He suggests that the ALJ failed to apply the required factors and the finding discounting Dr. McConnell's opinion was improper and not supported by substantial evidence.

Effective March 27, 2017, the regulations governing the procedures and standards for evaluating medical source opinions changed. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01 (Jan. 18, 2017); 20 C.F.R. §§ 404.1520c(a), 416.920c(a). Because Mr. Pearson filed his claim in May of 2018 (AR 268), the revised regulations apply to his claim.[3]

Under the new regulations set forth in 20 C.F.R. §§ 404.1520c and 416.920c, the Commissioner is to consider the persuasiveness of each medical

---

[3] Mr. Pearson alleged in his Opening Brief (Dkt. #16) that the prior regulations applied to this matter; however, in his Reply Brief (Dkt. #20) and at oral argument, Mr. Pearson conceded that the revised regulations apply.

source's opinions using five factors: (1) supportability; (2) consistency; (3) relationship with the claimant (which encompasses the length of treatment relationship, frequency of examinations; purpose and extent of treatment relationship, and examining relationship); (4) specialization; and (5) other factors tending to support or contradict a medical opinion or prior administrative medical finding. 20 C.F.R. §§ 404.1520c(c), 416.920c(c).

The most important factors in evaluating persuasiveness are supportability and consistency. 20 C.F.R. §§ 404.1520c(b)(2), 416.920c(b)(2). For supportability, "the strength of a medical opinion increases as the relevance of the objective medical evidence and explanations presented by the medical source increase." *Vellone v. Saul*, 1:20-cv-00261, 2021 WL 319354, at *6 (S.D.N.Y. Jan. 29, 2021) (citing 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1)). Consistency, on the other hand, "is an all-encompassing inquiry focused on how well a medical source is supported, or not supported, by the entire record." *Id.* (citing 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2)). The ALJ must explain his approach with respect to these factors when considering a medical opinion, but he is not required to expound on the remaining three unless the ALJ finds that two or more medical opinions or prior administrative medical findings about the same issue are both equally well-supported and consistent with the record, but not identical. *Id.* §§ 404.1520c(b)(2)–(3), 416.920c(b)(2)–(3).

The ALJ summarized Dr. McDonnell's testimony as follows:

> Dr. McDonnel [*sic*] opined that the claimant's pain would constantly interfere with his attention and concentration. The claimant was incapable of even a "low stress" job. Dr. McDonnell found the claimant

6

> could sit for five minutes and stand for five minutes. The claimant could sit, stand, and walk for less than two hours during a normal workday. Dr. McDonnell also found the claimant would need to walk around every five minutes for five minutes in a normal eight-hour workday. The claimant must be able to shift position at will and take unscheduled breaks every five minutes for thirty-minutes to an hour. The claimant must elevate his leg eight-to-ten inches four times a day. The claimant must also use an assistive device. Dr. McDonnell opined that the claimant could occasionally lift less than ten pounds, rarely lift ten pounds, and never lift twenty pounds or more. The claimant could frequently hold his head in a static position, occasionally look down and turn his head, but can rarely look up. The claimant had manipulative limitations, including a seventy percent reduction in his ability to grasp, turn and twist, objects in his bilateral hands. The claimant could perform fine manipulation eighty percent with his right hand and seventy-five percent with his left. The claimant could reach with his right arm forty percent of the time. Dr. McDonnell opined that the claimant would be absent more than four days a month.

(AR 43)

The ALJ considered both the supportability and consistency of Dr. McDonnell's medical opinion. In finding the opinion not persuasive, the ALJ noted that Dr. McDonnell offered only "very limited exam findings" and did not "explain how her objective medical findings support her endorsed degree of limitation." (AR 43.) Further, the ALJ found that Dr. McDonnell's opinion was inconsistent with the record, citing Mr. Pearson's ability to ambulate normally, his relatively conservative course of treatment, and the fact that his shoulder surgery improved some of his symptoms in that area, though he continued to experience some pain. (AR 43.) The ALJ also noted that the claimant "does not use, nor was he

7

ever prescribed, an assistive device" (AR 41), yet Dr. McDonnell opined that one was necessary.

"A lack of adequate explanation and consistency with other evidence of record are both appropriate considerations in weighing a source opinion." *Zagorianakos v. Colvin*, 81 F. Supp. 3d 1036, 1044 (D. Colo. 2015) (citations omitted). I conclude that the ALJ's finding that Dr. McDonnell's medical opinion was not persuasive is supported by the evidence in the record.

**II.     The ALJ's RFC determination is supported by substantial evidence.**

Mr. Pearson next challenges the ALJ's RFC findings as not based on substantial evidence. First, he contends that, because the ALJ did not properly weigh opinion evidence, the resulting RFC is in error. As set forth above, the ALJ properly considered the relevant factors when evaluating Dr. McDonnell's medical opinion and his finding concerning the persuasiveness of Dr. McDonnell's opinion is supported by substantial evidence. The resulting RFC is not improper on that ground.

Moreover, "[a]lthough the ALJ's determination must be grounded in some medical evidence . . . it ultimately is an administrative determination reserved to the Commissioner." *Zagorianakos*, 81 F. Supp. 3d at 1044 n.10 (citations omitted). Because the ALJ's RFC determination is administrative, not medical, the ALJ is "not required to adopt or rely on any medical source opinion in making [his] residual functional capacity assessment[.]" *Id.* (citations omitted). Instead, residual functional capacity is assessed "based on all of the relevant medical and other evidence . . . including medical records, observations of treating physicians

8

and others, and plaintiff's own description of his limitations." *Id.* (citations omitted). Therefore, the ALJ was not required to rely on Dr. McDonnell's opinion, or any other medical source opinion when making the RFC, so long as he properly considered other relevant medical evidence.

Second, Mr. Pearson argues that the "ALJ confuse[d] stable for good" when he considered the degenerative changes to Mr. Pearson's cervical spine, specifically the C5-C6 vertebrae. (Dkt. #16, at 21.) In relevant part, the ALJ compared imaging of Mr. Pearson's spine from August 2017 (AR 532) and October 2019. (AR 1994–95.) The August 2017 imaging report indicates "[s]light narrowing of the disc spaces at C4-5 and C5-6" and lists the "impression" as "[m]ild degenerative change." (AR 532.) The October 2019 imaging report, which itself provides a comparison to the August 2017 report, states "imaging again demonstrates mild disc space narrowing at C5-C6 level." (AR 1994.) The "impression" states: "finding [*sic*] suggest C5-C6 degenerative disc with mild bony neuroformanial encroachment at right C5-C6 level." (AR 1995.) Based on these records, the ALJ found that the "degenerative changes in the claimant's spine are stable" (AR 40), and later stated that the images "showed the degenerative changes in the claimant's lumbar and cervical spine were stable." (AR 43.)

Mr. Pearson does not object to the ALJ's description of his condition as "stable" or argue that the imaging reports indicate that his condition was, in fact, worsening. Instead, relying on *Kohler v. Astrue*, 546 F. 3d 260, 268 (10th Cir. 2008), Mr. Pearson suggests only that "the ALJ erred when he interpreted the

term stable as good, where it is possible that Mr. Pearson was stable but at a low functional level." (Dkt. #16, at 21.) In *Kohler*, the ALJ interpreted medical records indicating the claimant's mental health condition was stable to mean that her mental health was good. Here, however, the ALJ makes no such interpretation and nowhere suggests that the degenerative condition of Mr. Pearson's spine was "good" or somehow improving.[4] I therefore find no basis to construe the ALJ's interpretation of Mr. Pearson's "stable" condition as meaning anything other than that his condition was not changing or fluctuating, which is the typical meaning of the term "stable." *See* Merriam-Webster Dictionary, https://merriam-webster.com/dictionary/stable (defining the adjective "stable" as "not changing or fluctuating").

Finally, Mr. Pearson, citing to *Luna v. Bowen*, 834 F.2d 161 (10th Cir. 1987), alleges that the ALJ did not adequately address or account for his subjective complaints of pain in making the RFC findings. Under *Luna,* the ALJ must consider:

> (1) whether Claimant established a pain-producing impairment by objective medical evidence; (2) if so, whether there is a "loose nexus" between the proven impairment and the Claimant's subjective allegations of pain; and (3) if so, whether, considering all the evidence, both objective and subjective, Claimant's pain is in fact disabling.

*Musgrave v. Sullivan*, 966 F.2d 1371, 1375–76 (10th Cir. 1992) (citing *Luna*, 834 F.2d at 163–164). There is no dispute that Mr. Pearson suffers from pain-

---

[4] The ALJ described several of Mr. Pearson's symptoms as stable, but Mr. Pearson's Opening Brief only challenges the finding with respect to his C5-C6 vertebrae. (Dkt. #16, at 21.) In any event, I find that, for all conditions considered, the ALJ correctly used and interpreted the word "stable."

producing impairments that could reasonably be expected to cause his symptoms. However, the ALJ found that Mr. Pearson's statements as to the "intensity, persistence and limiting effects of these symptoms" were not "entirely consistent with the medical evidence and other evidence in the record . . . ." (AR 40.)

Generally, "credibility determinations 'are peculiarly the province of the finder of fact,' and should not be upset if supported by substantial evidence." *White v. Barnhart*, 287 F.3d 903, 909 (10th Cir.2001) (quoting *Kepler v. Chater*, 68 F.3d 387, 390–91 (10th Cir.1995)). Here, the ALJ reasonably assessed the evidence and resolved conflicts and medical opinions concerning Mr. Pearson's alleged limitations, as was appropriate. *Reyes v. Bowen*, 845 F.2d 242, 245 (10th Cir.1988) (conflicts in the evidence are for the ALJ to resolve). For example, Mr. Pearson testified that he could stand or walk for two or three hours maximum (AR 97), and Dr. McDonnell's opined that Mr. Pearson could sit, stand, and walk for less than two hours during a normal workday. (AR 2173.) By contrast, Dr. Virginia Thommen, M.D., the State agency consultant, opined that Mr. Pearson could stand, sit, or walk for about six to eight hours a day. (AR 164.) Where Dr. McDonnell opined that Mr. Pearson could occasionally lift ten pounds and never lift twenty pounds or more (AR 2173), Dr. Thommen opined that he could frequently lift ten pounds or more and occasionally lift twenty pounds. (AR 164.) The ALJ considered all of this evidence in his opinion (AR 40, 42–43.)

Overall, the ALJ found that the medical record was "not entirely consistent with the degree of limitation alleged by the claimant." (AR 40.) He gave clear,

11

legitimate reasons linked to specific evidence in the record for discounting Mr. Pearson's account of his limitations, including Mr. Pearson's longitudinal medical records and his relatively conservative treatment approach (which included physical therapy, exercising at the gym, getting massages, and wearing orthotics). Though a more restrictive RFC determination might have been supportable on this record, the ALJ's finding is still supported by substantial evidence and the Court will not disturb his findings. *Lax*, 489 F.3d at 1084 ("The possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.") (citation and internal quotation marks omitted); *Abdelmeged v. Colvin*, 2015 WL 5047645, at *6 (D. Colo. Aug. 26, 2015) ("The mere fact that there may be two permissible views of the evidence . . . is not indicative that the ALJ's choice between them was in error.") (citations omitted).

## Conclusion

For the reasons set forth above, the Commissioner's decision is **AFFIRMED.** Plaintiff's Complaint (Dkt. #1) is **DISMISSED**.

Dated this 22nd day of June, 2021.

BY THE COURT:

N. Reid Neureiter
United States Magistrate Judge